STATE, GEORGE T. TROWBRIDGE, PROSECUTOR, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK.

1. The provisions of a city charter as to duration of terms of officers must be strictly observed, and an ordinance beyond the scope of the powers granted by the charter is void.
2. The whole of an ordinance is not necessarily inoperative because some of its sections are inconsistent. A section not dependent on the inconsistent sections may stand.
3. The charter of the city of Newark does not require a proposed ordinance to be published ten days between its second and third readings, unless it is to affect personal liberty or involve the expenditure of money.

On *certiorari* to the common council of Newark, to review certain resolutions for the appointment of lieutenants of police.

Argued at February Term, 1884, before Justices REED and PARKER.

For the prosecutor, *J. Frank Fort.*

For the defendants, *Wm. B. Guild.*

PARKER, J. On the 1st day of February, 1884, the common council of the city of Newark passed the following resolutions, viz.:

"*Resolved,* That the offices of lieutenants of police be and the same are hereby declared vacant, to take effect when their successors are appointed and qualify.

"*Resolved,* That the following-named persons be and are hereby appointed lieutenants of police, to wit." Here are named the persons appointed and also those removed; among them is "Daniel Dippel, *vice* George T. Trowbridge, *removed.*"

George T. Trowbridge, the prosecutor, was, at the time of the passage of the resolutions, a lieutenant of police of the

city of Newark, and a member of the police department. Daniel Dippel, the person named in the resolutions to succeed Trowbridge in the office declared vacant, at once qualified and reported for duty.

It will be observed that these resolutions do not state any reason for declaring the office vacant, or any cause for the removal of the prosecutor. It is admitted that the resolutions in question were passed by the common council under claim of right in that body to pass resolutions creating a vacancy in such office, removing the incumbent and appointing a successor at pleasure, and without cause stated. This prosecutor brings this *certiorari* to test the legality of his removal under these resolutions.

If the common council had the legal right to remove the prosecutor without cause shown and without a hearing, it could doubtless be done by resolution. Where a common council is authorized by the charter to elect officers, and no mode of election is prescribed, they may appoint by resolution. 1 *Dill. on Mun. Corp.* (*ed.* 1873) 273. It follows that officers may be removed and, after vacancy declared, others be appointed in their stead, by resolution, unless some other mode be specially provided by the charter.

If, therefore, the common council had the power, in this case, to declare the office vacant and remove the prosecutor at pleasure, and without cause expressed, it could be done by resolution. But it is contended that the common council did not have such power, and that therefore the resolutions in question are invalid.

It is insisted, on part of the prosecutor, that an ordinance passed by the common council of the city of Newark on February 11th, 1882, forbids the removal of a member of the police department unless for cause manifested by complaint in writing, and proof upon hearing. Such undoubtedly is the purport of the terms of that ordinance, and if it was a valid ordinance and was in existence at the time of the passage of the resolutions in question, the prosecutor was not lawfully removed, and the resolutions are of no force.

But did the ordinance of February 11th, 1882, have a legal existence on the 1st day of February, 1884, the date of the passage of the resolutions? The answer to this question involves, first, the inquiry whether the ordinance of February 11th, 1882, was ever valid and binding; and secondly, if legal in its inception, whether or not it was repealed before the resolutions were passed.

First. Did the common council have the power legally to pass the ordinance of February 11th, 1882? Did it ever have a legal existence? It ordains that members of the police department shall be *removed* only upon complaint made and hearing before certain designated officers. If it does not contravene the charter of the city of Newark, if its provisions are not beyond the scope of the powers of the common council derived from the act of incorporation, then the ordinance of February 11th, 1882, would be valid so long as it remains unrepealed, but if its provisions were inconsistent with and contradictory to the charter, it never had a legal existence. The charter by which a municipal corporation is created is its organic law, and action beyond the scope of the powers granted by the charter is void. 1 *Dill. on Mun. Corp.* 180. The same writer adds that the provisions of the charter of a city, as to time and mode of election, appointment, qualifications, and the duration of term of officers, must be strictly observed. 1 *Dill. on Mun. Corp.* 268. If, therefore, the charter of the city of Newark provides that officers such as the prosecutor, shall hold office at the will and during the pleasure of the common council, and may be removed by that body without cause assigned, and from time to time the vacancies thus created be filled by new appointees, any ordinance purporting to limit the power of the appointing body, and forbidding removals except for cause upon hearing of charges, is in direct conflict with the charter, and therefore void.

Upon examining the charter, it is found that section 21 provides that the common council shall, from time to time, appoint, by a majority of the whole number, * * * a chief of police and such other subordinate officers, not therein

named, as they shall think necessary for the better ordering and governing of the city, and carrying into effect the powers and duties conferred and imposed upon said common council by the charter. The same section further provides that any person who shall be appointed to any office under its provisions shall continue in office until the office for which he shall have been appointed shall be declared vacant or until another person shall be appointed to succeed him and shall enter on the duties of his office. If this twenty-first section be the only part of the charter referring to the tenure of office of members of the police department, their appointment and removal, it is clear that the ordinance of February 11th, 1882, is not only inconsistent with, but in direct antagonism to the charter, in violation of its letter and spirit, and consequently void.

But it is said that there is another section of the charter that controls, and that under that section the validity of the ordinance of February 11th, 1882, is upheld. The section referred to is number 31. This section, among other things, provides that the common council shall have power to make, establish, publish, modify and repeal ordinances regulating and controlling a day and night police, and define the manner of their appointment and removal.

What is the true construction of the thirty-first section of the charter? Is it antagonistic to the twenty-first section, and not reconcilable therewith, or may the two sections be construed as harmonious? If they can fairly be made to harmonize, such construction should be given. I cannot believe that in so important a matter as a charter for the government of a city the legislature would invest the common council with the absolute power to declare vacancies in office, and give that body entire control over removals at pleasure, and in another section forbid the exercise of such power and control. Such absurd action was certainly not intended. To my mind there is no inconsistency between the twenty-first and thirty-first sections of the charter of Newark. The twenty-first section gives power to the common council to declare a vacancy in the office of a member of the police department, and to fill such

vacancy at will, without stating any cause. The thirty-first section does not take such power from the common council, nor authorize a change in the tenure of office. It does not create a fixed term of office, nor does it restrain the power to *remove*. It only authorizes the common council to pass ordinances prescribing a *mode* and *manner* of manifesting their will and pleasure in declaring vacancies, and removing and appointing officers; whether to do so by ballot, or resolution, or ordinance, or by mere motion adopted *viva voce*. It does not in the least infringe upon the twenty-first section, nor take from the common council any power therein given.

That such was the construction given to these sections of the charter by the common council previous to 1882 is manifest by the only ordinance upon the subject passed before February 11th, 1882. This ordinance is found on page 178 of the Book of Ordinances of 1876. Section 398 of that ordinance provides that the common council shall, from time to time, appoint so many sergeants, (afterwards called lieutenants,) doormen and policemen as they may deem necessary, who shall constitute the police department; and section 419 ordains that all members of said department shall hold office only during the pleasure of the common council, and may be removed by council at any time, and any member of said department may be dismissed from office by the common council. This is all that the ordinance of 1876 provides as to dismissal, removal and appointment of successors, and it is founded on the twenty-first section of the charter. The remainder of section 419 of the ordinance of 1876, upon which much reliance is placed by the prosecutor, refers, not to *removals* or *dismissals* from office, but to *suspensions* by the mayor or chief of police and *fines* that may be inflicted at discretion of the mayor and committee on police after hearing and for causes designated in the ordinance. But nowhere does the ordinance of 1876 assume to take from the common council the sole power given by the charter over *removals* at discretion and without cause. The only ordinance that assumes to do this is that of February 11th, 1882. As before

stated, the ordinance last named is in direct violation of the charter in that it purports to make members of the police department *removable* by common council only upon complaint and cause shown upon hearing.

The ordinance of February 11th, 1882, being void and of no effect in respect to the subject matter now under consideration, this case must be decided as if that ordinance had never been passed. It never had legal existence, and was void *ab initio* because in direct violation of the charter, which, in substance, provides that members of the police department shall hold office during the pleasure of the common council and may be removed by council at any time without cause. The ordinance of 1876 was not repealed by the invalid ordinance of 1882, but is still in force. Whether the provisions of the city charter of Newark in respect to the tenure of office of members of the police department be wise or not, is not under consideration. The charter must be taken as it stands, and ordinances in antagonism to the charter have no force.

My conclusion is that the resolutions declaring the office of lieutenant of police vacant, removing the prosecutor and appointing his successor, are valid, and that the prosecutor in this case is not now a lieutenant of police nor entitled to the office.

If the views hereinbefore expressed be correct, the resolutions in question could be lawfully adopted without first repealing the ordinance of February 11th, 1882; for that ordinance was void because beyond the scope of the powers given to the common council by the charter. But the common council, on the 29th day of January, 1884, for the purpose of repealing the ordinance of 1882, passed another ordinance. Now, if this last-named ordinance be valid so far as to repeal the ordinance of 1882, then these resolutions, passed February 1st, 1882, are legal, even if the views hereinbefore expressed are not well founded.

It is said, however, that the ordinance of 1884 was not legally passed because it was not published ten days in two daily newspapers in the city of Newark between its second

and third readings. Section 29 of the city charter requires such publication only where the proposed ordinance affects personal liberty or involves the expenditure of money. It is not pretended that the ordinance of 1884 affected personal liberty, nor does it involve the expenditure of money. It does not provide for the appointment of a greater number of officers than before, nor does it give to any a larger salary than was previously received; it proposes simply to continue the same number of officers without change in the amount of compensation.

It is also said that the ordinance of 1884 is invalid because its provisions are inconsistent and contradictory. There is no doubt that sections 2 and 3 of the ordinance of 1884 are contradictory, and these sections cannot stand. But the whole of an ordinance is not necessarily inoperative because some of its sections are inconsistent. It is a familiar principle that sections not dependent on nor connected with the inconsistent sections may stand. The fourth section of the ordinance of 1884 is not connected with, but is independent of the invalid sections. It does what was the evident intention of the common council to do in passing the ordinance, i. e., to repeal the ordinance of 1882 and restore in full force the ordinance of 1876, thus providing a complete police system in harmony with the charter, without regard to or any dependence on those sections which are void. As before stated, it was not necessary to repeal the ordinance of 1882 before passing the resolutions, to make them valid and binding, but such repeal having been effected by the ordinance of 1884, all doubt upon the subject is removed.

I think the resolutions were legally passed and should not be set aside.

REED, J. I think that under the charter of the city of Newark the common council has the power to pass an ordinance restricting its own right to remove officers appointed by virtue of section 21, and that the restriction may apply as well to the causes for which removals may be made

as to the course of procedure by which they shall be effected. I arrive at this conclusion from a comparative reading of the concluding portion of section 21 with the twenty-eighth subdivision of section 31.

The concluding clause of section 21 declares that this class of municipal officers shall continue in office until the office shall be declared vacant or until another person shall be appointed to succeed him and shall enter upon the duties of his office. The term, therefore, of any such officer is determined whenever there shall be a declared vacancy or an appointment of a successor and an entry upon the duties of the office.

In what way the vacancy shall be declared or the appointment made is entirely within the discretion of the common council. I find the power to indicate by ordinance the restrictions which the common council may think proper to throw around the appointment and removal of the officers whose removal is now questioned contained in the twenty-eighth subdivision of section 31. This portion of the last-mentioned section confers upon the common council the power to pass ordinances to establish, regulate and control a day and night police, and to regulate and define the manner of their appointment and removal, their duties and their compensation. I think that under these provisions of the charter the common council has the power to pass an ordinance declaring that these officers shall hold their positions during good behavior, and to indicate what acts shall constitute misbehavior for which they can be tried and removed.

The question then arises whether, at the date of the passage of the resolutions appointing and removing certain persons as members of the police department, without cause, there was an ordinance restricting the right which the common council would otherwise have had to pass these resolutions.

There was an ordinance passed in 1882 which provided that members of the police department should be continued in office during good behavior,    *    *    *    and should be removed only upon complaint, made in writing to the chief of police, and a hearing.

Just previous to the passage of these resolutions of appoint-ment and removal, another ordinance was adopted by the common council, which was obviously intended to operate as a removal of the obstruction to the passage of the resolutions which existed in the shape of the provision, above stated, in the ordinance of 1882. The force of this ordinance of February 1st, 1884, while it presents a curious specimen of inconsiderate municipal legislation, is, I think, to repeal the ordinance of 1882. The first section of the ordinance of 1884 provides for the appointment of policemen, &c., by a vote of a majority of the members of common council. The second section provides that the appointees shall hold office only at the will of the common council, and may at any time be removed by a vote of a majority of the members of common council. The third section provides that members of the police department so appointed shall be continued in office during good behavior, and shall be removed only upon complaint.

If the provisions of this ordinance were limited to the second and third sections it would be of no force, for the two sections are mutually destructive. The fourth section, however, contains an express repealer of the ordinance of 1882, already mentioned, and revives all ordinances or parts of ordinances repealed by the ordinance of 1884. I think the first section, which changes the former method of appointment, and the fourth section, providing for the repeal of the ordinance of 1882, are valid. This revives the ordinance of 1876. The four hundred and nineteenth section of that ordinance provides that all members of the police department shall hold their office only during the pleasure of the common council, and may be removed by them at any time. Then follows the provision that any member of said department may be dismissed from office by the common council or suspended from duty by the mayor or the chief of police, as provided by ordinance, or fined by the mayor or the committee on police, against whom any of certain charges are substantiated. This section is not free from some degree of obscurity in regard to

Trowbridge v. Newark.

the power of the common council to remove by resolution without cause. The express declaration that these officers may be removed at any time is followed by the clause that they may be dismissed by common council when any one of certain charges is substantiated. I think the significance of the whole section is this, namely, that while the common council is explicitly given power to remove at any time, yet when certain charges are substantiated against the officer he can be punished either by removal or suspension or fine. Any other construction of the section would leave the first sentence entirely meaningless. Besides, if we restrain the power to remove to those cases where a charge is substantiated, then the passage of the first section of the ordinance of 1882 was needless, and therefore the passage of the latter ordinance was a recognition by the common council of power to remove at will under the preceding ordinance of 1876.

I concur in the views of Judge Parker as to the character of the ordinance of 1884, in respect to the necessity of advertising its pendency.

The result is that sections 1, 4 and 5 of the ordinance brought up, together with the resolutions, are adjudged valid.